IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bonnie Sullivan, et. al.,                                    Case No. 3:07CV01877

        Plaintiffs,

      v.                                                              ORDER

Oregon Ford, Inc., d.b.a. Mathews Ford,
Oregon,

        Defendant/Third Party Plaintiff

      v.

Domestic Uniform Rental,

        Third Party Defendant

This case arises out of an accident and injuries sustained by Bonnie Sullivan on June 27, 2005. On that date, plaintiffs Bonnie Sullivan and John Sullivan visited defendant Mathews Ford Oregon (Mathews Ford), a car dealership in Oregon, Ohio. To enter defendant's business, plaintiffs passed through the building's service center. As Mrs. Sullivan was walking through that area, she slipped and fell on an accumulation of water on the floor and sustained serious and disabling injuries.

The Sullivans sued Mathews Ford, claiming the defendant breached its duty to exercise ordinary or reasonable care in maintaining the premises in a reasonably safe condition. Jurisdiction is proper under 28 U.S.C. § 1332.

Mathews Ford now moves for summary judgment, claiming the negligent party was an independent contractor and that there is no evidence from which to establish that Mathews Ford had constructive notice of the water on the floor. (Doc. 12.) I grant the motion for the reasons set out below.

**Background**

In the early 1990s Mathews Ford began contracting with Domestic Uniform Rental (Domestic Uniform) for the delivery of floor mats to Mathews Ford. Until the expiration of the contract,[1] every Monday a delivery person from Domestic Uniform would visit the dealership and, using a laundry cart, remove the previous week's soiled mats and replace them with clean mats. On June 27, 2005, the delivery occurred at approximately 9:00 am.

At approximately 10:30 am on the same day, the Sullivans entered Mathews Ford to return a rental car. As Mrs. Sullivan walked through the service area, she slipped on water that had collected on the floor and landed on her arm, wrist, and shoulder, sustaining injuries. As she was on the ground, Mrs. Sullivan felt wetness underneath her and saw water running from a mat towards a drain.

At this time, Mr. Sullivan went into the office of James Durliat, Mathews Ford's service manager, to notify Durliat of the incident. Durliat then went over to where Mrs. Sullivan had fallen and saw that water had run from a floor mat down the sloping floor toward a drain, where it "formed a puddle." (Doc. 12, Attach. 1 (Affidavit of James Durliat), ¶ 4.) According to Durliat "a trail leading away from the – from the corner of the carpet from depressing the carpet, and it – obviously

---

[1] After the incident, James Durliat, the service manager at Mathews Ford, determined that the contract was set to expire in approximately October, 2005, at which time he chose not to renew it.

2

gravity is going to force it down the hill to the drain and it's going to puddle in the drain." (Doc. 30 at 28.)

Durliat estimated that floor mat from which the water was trailing was "easily holding a gallon of water." (Doc. 30 at 23.) He also estimated that between the time the delivery person from Domestic Uniform placed the wet mats on the floor and the time that Mrs. Sullivan fell, 100 people had walked through the area. Of those people, twenty five to thirty were employees of Mathews Ford.

## Discussion

### 1. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must inform the district court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving" party. *High v. Butler County YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). It must also resolve any doubt as to the existence of a genuine issue of material fact against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 144, 158-59.

The party moving for summary judgement bears the initial burden of pointing out to the

district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with "affidavits or other similar material *negating* the opponent's claim." *Celotex*, *supra*, 477 U.S. at 323 (emphasis in original). Once the moving party has made this showing "the nonmoving party must 'designate' specific facts showing there is a genuine issue for trial." *Vitt v. City of Cincinnati*, 250 F. Supp.2d 885, 889 (S.D. Ohio 2002) (citing *Celotex*, *supra*, 477 U.S. 324).

Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984); *see also Anderson*, *supra*, 477 U.S. at 248.

### 2. Mathews Ford's Duties to Business Invitees

Plaintiffs' claims amount to an allegation that Mathews Ford "negligently failed to keep the floor of its store in a safe condition which caused [Mrs. Sullivan] to fall and sustain serious injuries." *Flowers v. Penn Traffic Co.*, 2001 WL 921427, at *2 (Ohio Ct. App.). Plaintiffs must therefore show that Mathews Ford owed Mrs. Sullivan a duty of care, that it breached that duty, and that the breach proximately caused Mrs. Sullivan's injuries.

Both parties agree that Mrs. Sullivan was a business invitee to Mathews Ford. As such, Mathews Ford owed Mrs. Sullivan a duty to exercise ordinary or reasonable care in maintaining its

4

premises in a reasonably safe condition "so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203, 203 (1985). Mathews Ford's responsibilities, however, do not extend so far that it serves as "an insurer of the customer's safety." *Id.* Under Ohio law, for a business invitee to recover for an injury caused by a hazard on defendant's premises, the plaintiff must show:

> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
>
> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
>
> 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943); *see also Combs v. First Nat'l Supermarkets, Inc.*, 105 Ohio App. 3d 27, 29-31 (1995) (holding that there was a genuine issue of material fact as to whether liquid on the floor existed for a sufficient length of time to justify constructive notice to the store before the plaintiff slipped on the liquid).

Defendant claims there is a genuine issue as whether to Mathews Ford is responsible for Mrs. Sullivan's injuries under the first and third analyses.[2] I deal with each in turn.

### 3. Mathews Ford's Relationship With Domestic Uniform Rental

Based on the evidence before me, one way the defendant could be responsible for the hazard that caused Mrs. Sullivan's injuries is if the law treats the employees of Domestic Uniform as officers or employees of Mathews Ford. However, while "an employer is liable for the negligent acts of its employees committed within the scope of employment, an employer of an independent

---

[2] Neither party alleges any facts relating to the second analysis.

contractor generally is not liable for the negligent acts of the independent contractor." *Pusey v. Bator*, 94 Ohio St. 3d 275, 278 (2002).

Plaintiffs correctly concede that Domestic Uniform is an independent contractor. *See id.* at 278-79 ("The chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." (quoting *Bobik v. Indus. Comm.*, 146 Ohio St. 187 (1946))). Plaintiffs argue, however, that defendant is still liable for the negligence of Domestic Uniform.

Ohio recognizes three exceptions to the rule that an employer is not liable for the negligent acts of an independent contractor. First, an employer may be liable for injuries that are the result of the employer's failure to "exercise reasonable care in the selection of a competent and careful independent contractor." *Albain v. Flower Hosp.*, 50 Ohio St. 3d 251, 257-58 (1990). Second, an employer may be liable if the independent contractor is performing a non-delegable duty imposed by statute, contract, common law, or arising from inherently dangerous work. *Id.* at 260-61; *see also Stevens v. Highland County Bd. of Comm'r*, 2004 WL 1925430, at *4 (Ohio Ct. App.) (explaining that if the work is an affirmative duty imposed by "statute, contract , franchise, charter or common law" or is inherently dangerous, "the employer may delegate the work to an independent contractor, but he cannot delegate the duty"). Third, an employer may be liable for the negligence of an independent contractor under the doctrine of agency by estoppel. *Albain*, *supra*, 50 Ohio St. 3d at 262-63.

Plaintiffs do not pursue arguments regarding the first and third exceptions. Instead, they argue that Mathews Ford cannot delegate its duty to protect business invitees against harm. To support this argument, the Sullivans cite the unpublished *Nienhaus v. Kroger Co.*, 2001 WL 664444

6

(Ohio Ct. App.).

In *Nienhaus*, the plaintiff slipped on a puddle of water in a Kroger store, sustaining injuries. In common with this case, Kroger contracted with a building services company to provide cleaning services. The machine the company used to clean the floors, however, "left a trail of water, which require[d] another person to follow with a mop in order to eliminate  .  .  . puddles." *Id.* at *2. The day Nienhaus slipped, no one was eliminating the puddles. *Id.* Recognizing that the building services company was an independent contractor, the Ohio Court of Appeals still held defendant Kroger vicariously liable because Kroger's common law duty to exercise ordinary care to protect business invitees was a non-delegable duty. *Id.* at 4.

The court in *Nienhaus* never clearly explained the activities Kroger delegated. At first glance it appears that Kroger only delegated certain cleaning activities – namely mopping – to the building services company. If this is the case, Kroger retained the obligations to perform the work required to maintain the premises. *See Stevens*, *supra*, 2004 WL 1925430, at *5 (analyzing the employer's action with regard to an independent contractor as a delegation of the duty to mop, not the duty of care); *Bohme, Inc. v. Sprint Int'l Commc'ns Corp.*, 115 Ohio App. 3d 723, 729-31 (1996) (holding that the negligence of an independent contractor could be imputed to employer *if* the work assigned was inherently dangerous). Delegating a cleaning activity does not amount to delegating the duty of care and negligent cleaning does not amount to a breach of that duty.

For these reasons, I do not follow *Nienhaus* and instead look to other Ohio appellate cases for guidance.[3] *See, e.g.*, *Stevens*, *supra*, 2004 WL 1925430; *see also Bardon v. U. S.*, 294 F. Supp

---

[3]
One can also distinguish *Nienhaus* from the case at bar because the trail of water was a recurring problem. Though it is not clear from the decision, if Kroger knew about the trail of water hazard, and delegated the duty of cleaning up that hazard, Kroger was arguably delegating the non-delegable

797, 798-99 (S.D. Ohio 1967) (holding that "in regard to the actual creation of a dangerous condition" any defect in the care or condition of the lobby floor was the responsibility of the independent contractor alone). An employer does not delegate its duty of care to invitees by delegating certain cleaning activities to independent contractors. Furthermore, Mathews Ford did not assume – via franchise, charter, or common law – an affirmative duty to clean the service area mats. As a result, "the nondelegable duty exception does not apply and the general rule that an employer is not liable for an independent contractor's negligence applies." *Stevens*, *supra*, 2004 WL 1925430, at *5.

### 4. Constructive Notice

The Sullivans also allege that "a genuine issue of material fact exists as to whether [Mathews Ford] had constructive notice of the hazard and whether the failure to remove the hazard therefore constituted negligence."[4] *Combs*, *supra*, 105 Ohio App. 3d at 29.

Under Ohio law, for a plaintiff to show that defendant should have had notice of a potential hazard – therefore triggering a duty to exercise ordinary care to remove or warn invitees about the hazard – the plaintiff must establish how long the hazard existed. *Combs*, *supra*, 105 Ohio App. 3d at 30 (citing *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 541 (1955)). The length of time the hazard existed then dictates whether defendant had sufficient time to exercise ordinary care. *Id.*; *see*

---

duty of care. *See id.* at *2 ("[T]he scrubbing machine used to mop the floors that night *normally* left a trail of water, which requires another person to follow with a mop in order to eliminate and prevent the existence of puddles *that could potentially be hazardous*." (emphases added)).

[4]

Because the court in *Nienhaus* assumed that Kroger was liable for the negligence of the building services company, it never examined whether Kroger could be liable via actual or constructive notice. *Nienhaus v. Kroger Co.*, 2001 WL 664444, at *3 (Ohio Ct. App.) ("[A]ll that is required of appellant to prove is that [the building services company's] employee's created the hazard.")

*also Perry v. Harvard Marathon, Inc.*, 2006 WL 1431051, at *3 (Ohio Ct. App.) (listing numerous cases in which courts held that a lack of evidence of how long a hazard existed – despite evidence that the hazard existed for a long period of time (e.g., crusted food; absorbed stains) – barred an inference of constructive notice.)

Plaintiffs cite two cases in support of their argument that the existence of a hazard for a fifteen to twenty minute period constitutes enough time to infer constructive notice. (Doc. 28 at 8-9 (citing *Combs*, *supra*, 105 Ohio App. 3d at 30-31; *Fox v. Ben Schechter & Co.*, 57 Ohio App. 275, 279 (1937)).) However, these cases, and additional Ohio case law, all analyze the existence of the hazard that immediately caused the injury. *See Combs*, *supra*, 105 Ohio App. 3d at 30-31 (puddle on store's floor); *Fox*, *supra*, 57 Ohio App. at 275-76 (decayed fruit and vegetable matter on store's floor); *see also Presley v. City of Norwood*, 36 Ohio St. 2d 29, 29-32 (1973) (large puddle concealing a coating of grease or oil); *Taylor v. K-Mart*, 2007 WL 1288546, at *2-3 (Ohio Ct. App.) (puddle on store's floor); *Perry*, *supra*, 2006 WL 1431051, at *3 (pothole). In contrast, the Sullivans cannot establish the length of time the water was on the floor; they can only point to the length of time that the wet mat was on the floor. The presence of the wet mat alone, however, "does not establish the length of time the specific [hazard] . . . existed." *Perry*, *supra*, 2006 WL 1431051, at *3 (holding that defendant's general awareness of potholes did not put it on notice of a specific pothole).

Accordingly, the lack of evidence regarding the length of time the puddle existed bars any inference that the defendants had constructive notice of the puddle.

**Conclusion**

For the foregoing reasons, it is therefore,

ORDERED that

1) Defendant's motion for summary judgment [Doc. 12] be, and the same hereby is, granted.

So ordered.

<u>s/James G. Carr</u>
James G. Carr
Chief Judge